# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-SA-01216-SCT

*UNITEDHEALTHCARE OF MISSISSIPPI, INC.*

*v.*

*AMERIGROUP MISSISSIPPI, INC., MAGNOLIA HEALTH PLAN, INC., MOLINA HEALTHCARE OF MISSISSIPPI, INC., MISSISSIPPI TRUE D/B/A TRUECARE AND MISSISSIPPI DIVISION OF MEDICAID*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/2022 |
| TRIAL JUDGE: | HON. TIFFANY PIAZZA GROVE |
| TRIAL COURT ATTORNEYS: | SAMMY LEE BROWN, JR. |
| | BRIAN PARKER BERRY |
| | HUGH RUSTON COMLEY |
| | GLEN AUSTIN STEWART |
| | KATIE CAMILLE BERRY |
| | GEORGE H. RITTER |
| | JOHN P. SNEED |
| | MARY MARGARET GAY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | MARY MARGARET GAY |
| | KERI SULLIVAN HENLEY |
| | ERIC J. WEISENBURGER |
| | ALEX P. HONTOS |
| ATTORNEYS FOR APPELLEES: | GEORGE H. RITTER |
| | DONNA BROWN JACOBS |
| | TIMOTHY LEE SENSING |
| | PHILLIP BUFFINGTON |
| | KATHRYN RUSSELL GILCHRIST |
| | GLEN AUSTIN STEWART |
| | JOHN P. SNEED |
| | MARK W. GARRIGA |
| | HUGH RUSTON COMLEY |
| | TIMOTHY JAMES ANZENBERGER |
| | BRANT JAMES RYAN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 06/20/2024 |

MOTION FOR REHEARING FILED:

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1. UnitedHealthcare of Mississippi, Inc. (United), submitted a qualification containing redacted information to the Mississippi Department of Medicaid (DOM) but ultimately was not selected for the contract. Subsequently, a public records request was submitted to the DOM seeking the redacted information contained in United's qualification. United sought a protective order exempting the redacted information contained in its qualification from disclosure. After *in camera* review, the chancery court found, among other things, that the governmental sanctions compilation contained in the qualification was not exempt from disclosure. United appeals and argues that, because the sanctions compilation is either a trade secret or confidential commercial or financial information, it is protected from disclosure. Because United failed to meet its burden on either issue, we affirm the decision of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶2. On December 10, 2021, the DOM issued Request for Qualifications No. 20211210 (the RFQ) seeking Managed Care Organizations (MCOs) to provide Medicaid Managed Care services after the incumbent contract expired. Mississippi Division of Medicaid, Request for Qualifications, RFQ # 20211210, https://medicaid.ms.gov/wp-content/uploads/2021/12/DOM-CCO-Procurement-RFQ-No.-20211210.pdf (last visited June 10, 2024). The RFQ

2

contained a provision stating that, in order to be eligible to submit a qualification, offerors should provide documentation that the contractor performing the managed care has not been sanctioned by a state or federal government within the previous ten years. *Id.* It additionally contained a provision instructing the offeror to submit a public copy of the qualification from which any confidential information had been redacted if its qualification had included such information. *Id.*

¶3.     In response, United, Amerigroup Mississippi, Inc., Magnolia Health Plan, Inc., Molina Healthcare of Mississippi, and Mississippi True d/b/a TrueCare submitted qualifications. United included in its qualification a compilation of governmental sanctions that it had incurred during the relevant time period. The sanctions compilation was redacted in the public copy that United submitted.

¶4.     On August 10, 2022, the DOM awarded contracts to other offerors and not to United.[1] Mississippi Division of Medicaid Office of Procurement, Memorandum (Aug. 10, 2022) http://medicaid.ms.gov/wp-content/uploads/2022/08/CCO-Procurement-Notice-of-Intent-to-Award-8.10.2022.pdf. Subsequently, United submitted a protest of the DOM's award decision. Public Procurement Review Board, Meeting Minutes (Mar. 1, 2023), https://www.dfa.ms.gov/sites/default/files/PPRB%20Home/Meeting%20Minutes/2023/3%20PPRB%20Agenda%20%26%20Minutes%203.1.23.pdf.

---

[1]Contracts were awarded to TrueCare, Magnolia, and Molina. Mississippi Division of Medicaid Office of Procurement, Memorandum (Aug. 10, 2022) http://medicaid.ms.gov/wp-content/uploads/2022/08/CCO-Procurement-Notice-of-Intent-to-Award-8.10.2022.pdf.

¶5.     On August 23, 2022, United received notice that several public records requests had been submitted to the DOM regarding the RFQs. Dorsey, Public Procurement Review Board Rule 1-301 Notice of UnitedHealthcare of Mississippi, Inc. (Sept. 1, 2022), https://medicaid.ms.gov/wp-content/uploads/2022/09/UHC-PPRB-1-301-Notice-9.1.22-4896-2110-3153-Final.pdf. Pursuant to Mississippi Code Section 25-61-9:

> Records furnished to public bodies by third parties which contain trade secrets or confidential commercial or financial information shall not be subject to inspection, examination, copying or reproduction under this chapter until notice to third parties has been given, but the records shall be released no later than twenty-one (21) days from the date the third parties are given notice by the public body unless the third parties have filed in chancery court a petition seeking a protective order on or before the expiration of the twenty-one-day time period.

Miss. Code Ann. § 25-61-9(1)(a) (Supp. 2023).

¶6.     On September 1, 2022, United notified the DOM and other offerors of its intent to seek a protective order to prevent disclosure of the redacted information contained in its qualification. On September 12, 2022, United filed a petition for a protective order to prevent the disclosure of information sought in the public records request, including the sanctions compilation. United argued that the redacted information sought in the public records request was either trade secrets or confidential commercial or financial information. Further, United's qualification was not selected by eleven out of one thousand possible points; therefore, United argued that any competitive advantage lost due to the release of its information could result in significant harm to its business.

¶7.     Attached to the petition was the affidavit of Erica Crouch, vice president of proposals for UnitedHealthcare Community and State. Crouch stated that the RFQ response had

4

contained confidential and proprietary business information, including trade secrets. She wrote that the MCO market in Mississippi was very competitive and, consequently, disclosure of the redacted information would cause irreparable and substantial competitive harm to United.

¶8. TrueCare, Magnolia, Amerigroup, and Molina had also filed petitions for protective orders, and, because the petitions arose out of the same RFQ process, the chancery court entered an order consolidating the actions on October 4, 2022. The offerors then submitted redaction logs, along with their redacted and unredacted proposals, to the chancery court.

¶9. The chancery court conducted an *in camera* review of the disputed redacted items. On November 15, 2022, the chancery court entered a protective order that granted United's petition in part and denied it in part. The chancery court found, in relevant part, that sanctions from government authorities are matters of public record subject to disclosure under applicable state law and ordered the DOM to disclose to the requestors the sanctions compilation. The court's order stated that "[t]he disclosed information shall be considered confidential in nature and may only be used in connection with the MississippiCAN and/or CHIP protests and related proceedings." The chancery court also limited access to the disclosed information to attorneys and persons involved in the protests and ordered the disclosed information to be destroyed after the protest proceedings.

¶10. United filed a notice of appeal and challenged the chancery court's order only as to the sanctions compilation.

**ANALYSIS**

5

## I.     Motion to Supplement

¶11.    In United's designation of record, it designated, *inter alia*, as part of the record necessary for appeal:

   a.     Unredacted Copies of "Management Qualification, 4.3.1.2 Corporate Experience," pp. 37-78 from Magnolia's response to RFQs.

   b.     Unredacted Copies of "Management Qualification, Audited Financial Statements and Pro Forma," pp. 4.3.2.6 124-318 from TrueCare's response to RFQs.

United requested that the documents remain under seal and be produced for *in camera* review only by this Court.

¶12.    The unredacted documents had not been made part of the record, however. Therefore, United then filed a Motion to Designate *In Camera* Submissions as Part of Record on Appeal in the chancery court. TrueCare and Magnolia objected to the motion and argued that the unredacted RFQ proposal excerpts were unnecessary to the appeal.

¶13.    The chancery court found that Magnolia's and TrueCare's unredacted proposal excerpts were immaterial to the appellate record and denied United's motion to designate the submissions as part of the record on appeal.

¶14.    United now files in this Court a motion to supplement the record and argues that the chancery court improperly excluded relevant material from the appellate record.

### TrueCare

¶15.    United seeks to supplement the appellate record with TrueCare's unredacted audited financial statements and related pro forma. After *in camera* review, the chancery court found

6

that the financial statements contained confidential financial information. The chancery court stated:

> While some of this information is publicly available, the Court finds that the compilation of this financial information in a single source is not publicly available. The Court further finds merit in the Affidavit of Richard Roberson that disclosure of this information in this readily available format would provide competitors an advantage and would cause substantial competitive harm to MSTrue.

¶16.  TrueCare argues that the *in camera* submissions were never part of the chancery court record. It cites this Court's prior holding that "Mississippi appellate courts may not consider information that is outside the record." *Hardy v. Brock*, 826 So. 2d 71, 76 (Miss. 2002) (citing *Dew v. Langford*, 666 So. 2d 739, 746 (Miss. 1995)). Recently, this Court addressed a similar issue in *Rush v. Rush Health Systems, Inc.*, 359 So. 3d 1047 (Miss. 2023), regarding a wrongful termination suit. On interlocutory appeal, this Court remanded the case to the trial court to conduct an *in camera* review of discovery documents that the trial court previously had ruled were protected as confidential and privileged. *Id.* at 1050 (citing En Banc Order, *Rush v. Rush Health Sys., Inc.*, No. 2020-M-01116-SCT (Miss. Jan. 20, 2021)). On remand, "the trial court entered a detailed discovery order ordering that certain documents be produced, while denying the production of other documents." *Id.* at 1050-51. The documents reviewed *in camera* by the trial court were not part of the record on appeal. *Id.* at 1051. This Court found that "[t]he trial court is in a much better position than this Court to determine whether or not a legal exception may or may not apply to whatever privilege(s) the court has found to exist after its extensive in camera review in the matter." *Id.* at 1063.

¶17.  Mississippi Rule of Appellate Procedure 10(e) states:

> If anything material to either party is omitted from the record by error or accident or is misstated in the record, the parties by stipulation, or the trial court, either before or after the record is transmitted to the Supreme Court . . . or either appellate court on proper motion or of its own initiative, may order that the omission or misstatement be corrected, and, if necessary, that a supplemental record be filed. . . . All other questions as to the form and content of the record shall be presented to the appropriate appellate court.

M.R.A.P. 10(e). Rule 10(f) clarifies that

> Nothing in this rule shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate, and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal.

M.R.A.P. 10(f). The comment to Rule 10 states that "[t]he purpose of the Rule is to permit and encourage parties to include in the record on appeal only those matters material to the issues on appeal." M.R.A.P. 10 cmt.

¶18.    TrueCare argues that its audited financial reports and pro forma are not material to United's appeal. We agree. TrueCare's audited financial statements are not necessary to determine whether the sanctions compilation at issue should be considered a trade secret or confidential commercial or financial information. Further, unredacted financial statements are not sufficiently similar to a sanctions compilation to warrant comparison.

**Magnolia**

¶19.    United also seeks to supplement the record with Magnolia's Management Qualifications: 4.3.1.2 Corporate Experience, which contains publicly funded contract costs for all affiliate managed care contracts. In the redacted version of section 4.3.1.2, the dollar amounts are redacted after the phrase "Publicly funded contract cost[.]" As to section 4.3.1.2, the chancery court found:

> The Court has reviewed the limited redactions contained in these pages. The same constitutes publicly funded contract costs for all affiliated managed care contracts. While much of this information is publicly available, the Court finds that the compilation of this financial information in a single source is not publicly available. This Court further finds merit in the Affidavit of Aaron Sisk where in he avers that disclosure of this information in this readily available format would provide competitors "a competitive bidding advantage in those areas on other contracts." Therefore, the Court finds that disclosure would compromise Magnolia's ability to compete in future business endeavors.

¶20. Magnolia argues that the redacted version of section 4.3.1.2, which is already included in the record, is all United needs to make its argument on appeal. Magnolia asserts that United has offered no reason why it would be necessary for this Court to review specific contract figures to understand and analyze United's argument that its sanction amounts should likewise be protected. Magnolia also argues that the chancery court recognized that the consolidation of Magnolia's public contract costs in one place allows competitors to easily use that information in determining their own future proposals related to those contracts. Again, we find that the actual costs of Magnolia's publicly funded contracts are not necessary to determine the merits of this appeal. Therefore, we deny United's motion to supplement the record.

## II.     Sanctions Compilation

¶21. "To reverse the ruling of the trial court requires a de novo finding that the chancellor erroneously interpreted or applied the law or that the chancellor's findings of fact were not supported by 'substantial, credible, and reasonable evidence.'" *Gannett River States Publ'g Co. v. Entergy Miss., Inc.*, 940 So. 2d 221, 223 (Miss. 2006) (citations omitted) (quoting *City of Jackson v. Perry*, 764 So. 2d 373, 376 (Miss. 2000)).

9

**a.** **Whether the sanctions compilation is a trade secret under Mississippi Code Section 75-26-3 that is exempt from disclosure.**

¶22. The Mississippi Public Records Act of 1983 (PRA) mandates that "public records must be available for inspection by any person unless otherwise provided . . . ." Miss. Code Ann. § 25-61-1 (Rev. 2018). Unless an exemption applies, "all public records are . . . declared to be public property . . . ." Miss. Code Ann. § 25-61-5(1)(a) (Supp. 2023). Mississippi Code Section 25-61-11 provides an exemption to that general rule, stating:

> The provisions of this chapter shall not be construed to conflict with, amend, repeal or supersede any constitutional law, state or federal statutory law, or decision of a court of this state or the United States which at the time this chapter is effective or thereafter specifically declares a public record to be confidential or privileged, or provides that a public record shall be exempt from the provisions of this chapter.

Miss. Code Ann. § 25-61-11 (Rev. 2018).

¶23. As previously stated, Mississippi Code Section 25-61-9(1)(a) provides that

> [r]ecords furnished to public bodies by third parties which contain trade secrets or confidential commercial or financial information shall not be subject to inspection, examination, copying or reproduction under this chapter until notice to said third parties has been given, but such records shall be released within a reasonable period of time unless the said third parties shall have obtained a court order protecting such records as confidential.

Miss. Code Ann. § 25-61-9(1)(a). United first argues that the sanctions compilation is exempt from disclosure because it is a trade secret. Section 75-26-3(d) defines a trade secret as follows:

> (d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process, that:
>
> > (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper

10

means by, other persons who can obtain economic value from its disclosure or use, and

(ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Miss. Code Ann. § 75-26-3(d)(i)-(ii) (Rev. 2016).

¶24. Therefore, when determining whether information constitutes a trade secret, "[t]he first question is whether the list '[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use . . . ." *Fred's Stores of Miss., Inc. v. M & H Drugs, Inc.*, 725 So. 2d 902, 908-09 (Miss. 1998) (alterations in original) (quoting Miss. Code Ann. § 75-26-3(d)(i)). United failed to provide sufficient evidence showing that the sanctions compilation was not readily ascertainable by proper means.

¶25. The sanctions compilation is a listing of forty-five governmental sanctions, fines, penalties, and corrective actions. The compilation contains the following information: the date of the sanction, the source, the amount of the fine, a description of the fine, and a description of the action taken. Crouch submitted an affidavit stating that she was involved with the drafting of United's qualification and that the qualification, in general, contained confidential and proprietary business information. Her affidavit provided that "United relied on and understood that its confidential information submitted in its RFQ Response and its clarifications would be kept confidential and not publicly disclosed to third parties." Further, she wrote:

11

> Disclosure of the redacted information in United's RFQ Response information would cause irreparable and substantial competitive harm to United because the MCO market in Mississippi is very competitive. United was non-selected by just eleven out of one thousand possible points. As a result, any competitive advantage lost by United due to release of its information could result in significant harm to United's business in Mississippi and other markets in which United's affiliated entities operate.

Crouch asserted that, if the RFQ were re-issued, "United would use some of the same information that was included in its RFQ Response responding to the re-issued RFQ. It therefore derives independent economic value from that information remaining secret."

¶26. Molina argues that United's blanket statements that the managed care market in Mississippi is very competitive, that it lost a the bid in this case by a relatively narrow margin, and that releasing the sanctions list could result in substantial harm fall short of the burden to exempt the sanctions compilation from the PRA. We agree.

¶27. This Court previously has found that a master customer list created by Super D and containing "the patient's last name, first name, phone number, street address, city, state, zipcode, number of prescriptions filled that year, and a dollar amount of the money spent at Super D on prescriptions for the year" met the first prong of the definition of a trade secret. *Fred's Stores*, 725 So. 2d at 909. This Court reasoned that:

> The information on the list had independent economic value as evidenced by the fact that marketing companies are willing to pay money to obtain it. Further, the information on the list, especially the amounts of money spent by customers of Super D and the number of prescriptions filled, was not information that was known to Fred's or that was generally ascertainable to them by proper means.

*Id.* at 910.

¶28.    In contrast, this Court has found that a computer program used in steel fabrication bids was not a trade secret in part because the information "could be readily ascertainable through reverse engineering." *Marshall v. Gipson Steel, Inc.*, 806 So. 2d 266, 273 (Miss. 2002). There, witnesses testified that they "would be able to determine [Gibson Steel's] labor rates 'by hand' if provided with [Gibson Steel's] bids on previous jobs whose steel requirements were known to them." *Id.* at 271-72.

¶29.    United failed to show how the sanctions compilation was not generally ascertainable by proper means. United states that "[t]he Sanctions Compilation would not be easily replicable . . . as the information would have to be collected from many different jurisdictions via public record requests." In *Marshall*, however, this Court quoted a decision of the United States District Court for the Southern District of Indiana: "Whether information is readily ascertainable depends upon the degree of time, effort and expense required to duplicate or acquire the information by proper means . . . . The party asserting a trade secret has the burden to show that replicating the information would require substantial investment of time, expense and effort." *Marshall*, 806 So. 2d at 271 (alteration in original) (internal quotation marks omitted) (quoting *Lawler Mfg. Co. v. Bradley Corp.*, No. IP 98-1660-CM/S, 2000 WL 1456336, at *5 (S.D. Ind. Apr. 26, 2000)).

¶30.    The comment to the Uniform Trade Secrets Act (UTSA) gives an example of a trade secret as "the results of *lengthy and expensive* research which proves that a certain process will *not* work . . . ." Unif. Trade Secrets Act § 1 cmt. (West, Westlaw through 2022 annual meetings of the Nat'l Conf. on Unif. State L. & Am. La. Inst.) (emphasis added). The

13

comment also provides that "if reverse engineering is *lengthy and expensive*, a person who discovers the trade secret through reverse engineering can have a trade secret in the information obtained from reverse engineering." *Id.* (emphasis added).

¶31. Crouch asserted in her affidavit that, overall, "United's RFQ Response contains confidential and proprietary business information, including trade secrets." The list of redacted information from United's qualification states as the reason it should be exempt from disclosure: "Trade Secret – Miss. Code Ann. § 25-61-9(1); Miss. Code Ann. § 79-23-1(1)." Crouch then stated that the redacted information contained in United's qualification "is not generally known outside of United." United further asserts that it provided

> five separate ways in which United protects its information to ensure it is not readily ascertainable by proper means, including (1) distributing it only to need-to-know employees, (2) maintaining the information on computers with password protection, (3) locking the doors of its offices and permitting only United employees or invited and accompanied guests onto the premises, (4) complying with applicable laws and RFQ provisions by redacting trade secret and confidential information, and (5) monitoring the release of RFQ information and pursuing court protection when release is threatened.

As United stated, however, these assertions are how United generally *protected* information that it deemed confidential. The second prong of the definition of a trade secret is whether the information "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Miss. Code Ann. § 75-26-3(d)(ii).

¶32. In order for the sanctions compilation to be considered a trade secret, it must meet the first prong of the definition: whether the list "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use . . . ."

14

*Fred's Stores*, 725 So. 2d at 908-09 (alterations in original) (quoting Miss. Code Ann. § 75-26-3(d)(i)). United stated that the sanctions compilation would not be easily replicable as the information would have to be collected from many different jurisdictions via public records requests. Thus, United admits that the information is largely available through public records requests. United also argues that "no evidence was provided demonstrating that the Sanctions Compilation is publicly available *in this consolidated format*" and that Molina provided no evidence that the sanctions compilation can be easily compiled through public records requests. Yet it was United's burden to "show that replicating the information would require substantial investment of time, expense and effort." *Marshall*, 806 So. 2d at 271 (internal quotation mark omitted) (quoting *Lawler Mfg.*, 2000 WL 1456336, at *5). The sanctions compilation lists forty-five sanctions along with a description of the action taken. Although United states that gathering the information would require numerous public records requests, United has fallen short of its burden to show that submitting the relevant public records requests would "require substantial investment of time, expense and effort." *Id.* (internal quotation mark omitted) (quoting *Lawler Mfg.*, 2000 WL 1456336, at *5).

¶33. United does contend that the steps taken by United to remedy the issue for which the sanction was imposed was not publicly available. In the "Description of the Action Taken" column of the compilation, if a monetary fine was assessed, it stated that liquidated damages were paid and the month and year of the payment. If no monetary fine was assessed, the majority of the descriptions state: "Business owners completed remediation action steps and

15

actions steps have been accepted by the regulator."[2] Thus, the description of the action taken, whether it was paying the monetary fine imposed or remedying the problem, does not transform the compilation into a trade secret.

¶34. The chancery court's determination that the sanctions compilation was publicly available information and was therefore not exempt from disclosure is supported by substantial evidence. Accordingly, this issue lacks merit.

      **b.**     **Whether the sanctions compilation constitutes confidential commercial and financial information that is exempt from disclosure under Mississippi Code Section 25-61-9(1)(a).**

¶35. United next argues that, even if the sanctions compilation is not a trade secret, it is still exempt from disclosure as confidential commercial or financial information. Under Section 25-61-9(1)(a), "confidential commercial or financial information" also is protected from disclosure with a court order. Miss. Code Ann. § 25-61-9(1)(a). Moreover, Mississippi Code Section 79-23-1(1) provides that "[c]ommercial and financial information of a proprietary nature required to be submitted to a public body, as defined by paragraph (a) of Section 25-61-3, by a . . . corporation . . . shall be exempt from the provisions of the [PRA] . . . ." Miss. Code Ann. § 79-23-1(1) (Rev. 2013).

¶36. "Generally, the words 'confidential commercial or financial information' are to be interpreted using the 'common and ordinarily accepted meaning of the terms.'" *Gannett*, 940 So. 2d at 225 (quoting *Caldwell & Gregory, Inc. v. Univ. of S. Miss.*, 716 So. 2d 1120, 1123

---

[2]Three of the sanctions for which no monetary fine was assessed have variations of this language and stated: "Business owners reviewing non-compliance for remediation and awaiting feedback from regulator"; or "Business owners completed remediation action steps and awaiting feedback from the regulator."

(Miss. Ct. App. 1998)). Black's Law Dictionary defines "confidential information" as "[k]nowledge or facts not in the public domain but known to some, esp. to those having a fiduciary duty not to misuse the knowledge or facts for their own advantage." *Confidential Information*, Black's Law Dictionary (11th ed. 2019).

¶37.    In *Gannett*, a publishing company filed a public records request "to disclose the amount Entergy Mississippi, Inc. (Entergy) was charging Nissan for electrical service at its automobile manufacturing plant . . . ." *Gannett*, 940 So. 2d at 222. This Court found that

> Entergy produced substantial, credible, and reasonable evidence that disclosing the information contained in the Agreement would compromise Entergy's ability to offer competitive prices to other large users, cripple its ability to negotiate with existing and new customers, and jeopardize Entergy's ability to use lucrative high-volume user contracts to keep the rates of smaller users lower.

*Id.* at 225.

¶38.    This Court has not previously defined confidential commercial information. Although not binding authority, the Court of Appeals has stated that "[c]ertainly, private third parties may be in possession of information regarding their financial status and business practices that they would legitimately consider *confidential* even though the information might not meet the strict test of being a trade secret . . . ." *Caldwell & Gregory, Inc.*, 716 So. 2d at 1122.   A Nevada district court found that "[c]onfidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994)). Further, "courts have likened the characteristics of 'confidential commercial information' to those of 'trade secrets.'" *Ohio*

17

*Valley Env't Coal. v. Elk Run Coal Co.*, 291 F.R.D. 114, 119 (S.D.W. Va. 2013). Factors used to consider whether information qualifies as confidential commercial information include:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount or effort or money expended . . . in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* (alterations in original) (quoting *United States v. Int'l Bus. Machs. Corp.*, 67 F.R.D. 40, 46-47 (S.D.N.Y. 1975)).

¶39. United has not proved that the sanctions compilation, which largely includes information that can be obtained by public records requests, should be exempt from disclosure. Crouch's affidavit stated that the redacted information contained in its qualification was not generally known outside of United. She wrote that "United invests considerable time and resources into ensuring that its confidential and proprietary information, including the redacted information in its RFQ Response and the information in its clarifications, remains confidential." She also lists the ways that United keeps the information secure and states that "United only distributed relevant information to need-to-know employees." The affidavit also stated that disclosure of the redacted information in its qualification "would cause irreparable and substantial competitive harm to United because the MCO market in Mississippi is very competitive."

¶40. Crouch's affidavit does not, however, explain how the sanctions list, specifically, would affect its competitive advantage. United failed to explain, beyond general assertions,

18

how its competitors might use the information contained the sanctions compilation to their competitive advantages. It did not show that the disclosure of forty-five governmental sanctions would "compromise [its] ability to offer competitive prices to other large users, cripple its ability to negotiate with existing and new customers, and jeopardize [its] ability to use lucrative high-volume user contracts to keep the rates of smaller users lower." *Gannett*, 940 So. 2d at 225.

¶41. United seems to argue that, because the MCO market in Mississippi is very competitive, any release of information it considers confidential would affect its competitive status. This Court has found, however, that in interpreting the PRA, "(1) there is to be a liberal construction of the general disclosure provisions of a public records act, whereas a standard of strict construction is to be applied to the exceptions to disclosure; [and] (2) any doubt concerning disclosure should be resolved in favor of disclosure . . . ." *Miss. Dep't of Wildlife, Fisheries and Parks v. Miss. Wildlife Enf't Officers' Ass'n*, 740 So. 2d 925, 936 (Miss. 1999). As Molina argues, simply because United compiled the sanctions into a list does not automatically transform public information into confidential commercial information. United must show more. Therefore, the chancery court did not err by finding that the sanctions compilation is not protected from disclosure under the PRA.

**CONCLUSION**

¶42. Because the documents reviewed *in camera* by the chancery court are not necessary to determine the issues on appeal, we deny United's motion to supplement the record. Additionally, United failed to submit sufficient evidence showing that the sanctions

19

compilation meets the definition of a trade secret or constitutes confidential commercial or financial information. Accordingly, we affirm the decisions of the chancery court.

¶43.   **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**